UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SAVERS PROPERTY & CASUALTY INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 1:21-cv-01802-MJD-TWP<br>) |
| ROCKHILL INSURANCE COMPANY, et al., | )<br>) |
| Defendants. | )<br>) |
| CLARK-FLOYD LANDFILL, LLC., | )<br>) |
| Counter Claimant, | )<br>) |
| v. | )<br>) |
| SAVERS PROPERTY & CASUALTY INSURANCE COMPANY, | )<br>)<br>) |
| Counter Defendant. | ) |
| CLARK-FLOYD LANDFILL, LLC., | )<br>) |
| Cross Claimant, | )<br>) |
| v. | )<br>) |
| NAUTILUS INSURANCE COMPANY,<br>ROCKHILL INSURANCE COMPANY, | )<br>)<br>) |
| Cross Defendants. | ) |

**ORDER**

This matter is before the Court on Plaintiff Savers Property & Casualty Insurance Company's Motion for Judgment on the Pleadings, [Dkt. 100], Defendant Rockhill Insurance Company's Motion for Summary Judgment, [Dkt. 131], Counter and Cross Claimant Clark-

Floyd Landfill, LLC's Motion for Partial Summary Judgment, [Dkt. 122], and Cross Defendant Nautilus Insurance Company's Motion to Dismiss, [Dkt. 117]. The motions have been fully briefed. For the reasons set forth below, the Court **GRANTS** Savers' Motion for Judgment on the Pleadings, **GRANTS IN PART** and **DENIES IN PART** Rockhill's Motion for Summary Judgment, **GRANTS IN PART** and **DENIES IN PART** CFL's Motion for Partial Summary Judgment, and **GRANTS** Nautilus' Motion to Dismiss.

## I.     Background

The following facts are undisputed. Clark County, Floyd County, and Clark Floyd Landfill, LLC ("CFL") entered a Franchise and License agreement, effective January 1, 2004, with regard to a landfill owned by the Counties ("the Landfill"), in which CFL agreed to

> operate and maintain the landfill upon the land in accordance with all laws, statutes, ordinances, rules and regulations of the United States, the State of Indiana, and any local government entity having jurisdiction, and shall accept for disposal all garbage, ashes, cans, bottles, paper, ordinary trash and refuse and any other type of permitted residential and commercial solid waste which may be brought to the landfill for disposal by any person, organization or governmental entity or unit.

[Dkt. 120-2 at 5.] In connection with CFL's operation of the Landfill, the Indiana Department of Environmental Management has issued operating permits to CFL, including a solid waste permit that governs how CFL operates under applicable solid waste laws and rules as well as an air permit. [Dkt. 133-11 at 2.] Pursuant to the Franchise Agreement and Indiana law, s*ee* 329 Ind. Adm. Code. 12-2-5.2; 12-7-1, 2, CFL had a certified operator as well as a V.P. of Environmental Affairs involved in its operation. [Dkt. 133-10 at 1.]

On August 12, 2016, residents within a three-mile radius of the Landfill (the "Underlying Plaintiffs") filed a class action lawsuit (the "Underlying Lawsuit") for injunctive relief and

damages. [Dkt. 1-4.] The Underlying Plaintiffs filed a first amended complaint on December 20, 2016, naming CFL as a defendant. [Dkt. 99-1.]

The Underlying Plaintiffs allege that—because of CFL's negligent and/or intentional and improper construction, maintenance, and/or operation of the Landfill—their properties, including their neighborhoods, residences, and yards, have been and continue to be invaded by noxious odors, pollutants, and air contaminants originating from the Landfill. [*Id.* at 7-11.] As a result of the alleged invasion of the Underlying Plaintiffs' properties by pollutants, noxious odors, and air contaminants, the Underlying Plaintiffs have allegedly suffered injuries, including exposure to the pollutants, horrific odors, and air contaminants themselves, as well as loss of use and enjoyment of their properties. [*Id.* at 13-14.] The Underlying Plaintiffs assert causes of action for public and private nuisance as well as negligence/gross negligence and seek compensatory and punitive damages from CFL in excess of $5 million. [*Id.* at 7-11.]

CFL purchased policies from four different insurers during the relevant period covered by the Underlying Lawsuit, three of which are parties to this suit.[1] Plaintiff and Counter-Defendant Savers Property & Casualty Insurance Company ("Savers") sold CFL two years of coverage under a Commercial General Liability ("CGL") and Pollution Liability Coverage policy, effective January 1, 2012, to January 1, 2014. [Dkt. 1-6, Dkt. 1-7.] Defendant and Cross-Defendant Rockhill Insurance Company ("Rockhill") sold CFL three years of coverage under primary and excess CGL and Site-Specific Pollution Liability ("SSPL") policies, effective January 1, 2010, to January 1, 2012, and January 1, 2014, to January 1, 2015. [Dkt. 1-1, Dkt. 1-2, Dkt. 1-3, Dkt. 133-2, Dkt. 133-3, Dkt. 133-4.] Lastly, Cross-Defendant Nautilus Insurance

---

[1] The fourth insurer, Evanston Insurance Company, is a non-party with a New York choice-of-law provision in its policy. [Dkt. 122-1 at 3.] It sold CFL coverage for 2015. [*Id.*]

3

Company ("Nautilus") sold CFL one year of coverage under CGL and SSPL policies, effective January 1, 2016, to January 1, 2017. [Dkt. 1-8, Dkt. 1-9.]

## II. Discussion

Two main issues are raised by all of the pending motions: (1) whether Defendant Rockhill Insurance Company ("Rockhill") has a duty to defend CFL in the Underlying Lawsuit, and (2) whether all three insurers have a duty to indemnify. For the following reasons, the Court finds that Rockhill has a duty to defend CFL in the Underlying Lawsuit and that the question of whether the insurers have a duty to indemnify CFL is premature.

### A. Indemnity

Cross-Defendant Nautilus brings its motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), which requires the dismissal without prejudice of claims over which the federal court lacks subject matter jurisdiction. In reviewing a Rule 12(b)(1) motion, the Court "must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). When subject matter jurisdiction is not apparent on the face of the complaint and is contested, "the district court may properly look beyond the jurisdictional allegations of the complaint . . . to determine whether in fact subject matter jurisdiction exists." *Sapperstein v. Hager*, 188 F.3d 852, 855-56 (7th Cir. 1999) (internal quotations omitted). The burden of proof with regard to a Rule 12(b)(1) motion is on the party asserting that the court has subject matter jurisdiction. *Id.*

In its motion to dismiss, Nautilus argues that the Court must dismiss as unripe CFL's claim against it for a declaratory judgment regarding its duty to indemnify CFL in the Underlying Lawsuit. [Dkt. 117 at 2-6.] The Declaratory Judgment Act provides, in relevant part, that "any court of the United States, upon the filing of an appropriate pleading, may declare the

rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). This statute, however, does not dispense with Article III's case or controversy requirement, *Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 627 (7th Cir. 1995), nor does it supply the court with subject matter jurisdiction, *Lawline v. Am. Bar Ass'n*, 956 F.2d 1378, 1387 (7th Cir. 1992).

The Seventh Circuit has repeatedly held that "an insurer ordinarily cannot obtain a declaratory judgment as to its liability prior to the insured first being found liable." *Argento v. Vill. of Melrose Park*, 838 F.2d 1483, 1492 (7th Cir. 1988) (abrogated on other grounds); *see also American Bankers Insurance Company of Florida v. Shockley*, 3 F.4th 322, 331-32 (7th Cir. 2021); *Premcor USA, Inc. v. American Home Assurance Co.*, 400 F.3d 523, 530 (7th Cir. 2005); *Cunningham Bros., Inc. v. Bail*, 407 F.2d 1165 (7th Cir. 1969) (suit to determine insurer's obligations to indemnify was premature until insured was determined liable to third party).

While the Seventh Circuit has indicated some willingness to deviate from the general rule that decisions about indemnity should be postponed until the underlying liability has been established, *see Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677 (7th Cir. 1992), it does so rarely. CFL cites to *Bankers Trust Co.* to support its argument that this Court can and should issue a declaratory judgment, despite liability not yet being determined in the Underlying Lawsuit. [Dkt. 147 at 18.] While CFL is correct that a liability determination is not always required, the fact that no liability determination has been made is, of course, "relevant . . . to the district judge's exercise of his equitable discretion to grant or withhold declaratory relief." *Bankers Trust Co.,* 959 F.2d at 681. The other relevant factors discussed in *Bankers Trust Co.* include whether (1) there exists a sufficient probability that the plaintiff would win a judgment that would be covered by the policy; (2) there is a high amount of damages involved in the

underlying claim; (3) the insured is likely unable to pay that amount if found liable; and (4) there is no other insurance coverage for the potential liability. *Id.* at 681-82.

The Court, in its discretion, finds that in this case, the general rule applies, and declaratory judgment should be withheld until after liability is determined in the Underlying Lawsuit. The Underlying Lawsuit is still pending, with a jury trial set for July 25, 2023. *See* MyCase, *Gonzales et al v. Clark-Floyd Landfill, LLC*, Case No. 10D06-1608-CT-000131 (last visited September 28, 2022). The insurers' duties to indemnify will depend significantly upon the facts and outcome of the Underlying Lawsuit, and even if all the claims are covered by the policies, it is possible that not all of the damages will be, as two of the insurers have clear and unambiguous punitive damages exclusions. [Dkt. 1-9 at 9, Dkt. 103-2 at 36; Dkt. 133-2 at 23.] The Court has little basis on which to evaluate the likelihood of CFL's liability in that action, the level of liability likely to be incurred, or CFL's ability to pay any possible damages, and any opinion on these issues would be merely advisory. Thus, the issue of indemnity is premature. *See Indiana Ins. Co. v. Kopetsky*, 11 N.E.3d 508, 529 (Ind. Ct. App. 2014) (The "issue of indemnity is not ripe for review on any basis where there has been no finding of liability in the underlying lawsuit."). In such instances, the proper course of action is to dismiss the claim without prejudice. *Nationwide Ins. V. Zavalis*, 52 F.3d 689, 693 (7th Cir. 1995).

Accordingly, Nautilus' motion to dismiss, [Dkt. 117], is **GRANTED**, and CFL's claim seeking declaratory judgment that Nautilus has a duty to indemnify CFL is **DISMISSED WITHOUT PREJUDICE.** For the same reason, CFL's cross-claim against Rockhill and counterclaim against Savers seeking declaratory judgment that Savers and Rockhill have a duty to indemnify CFL are also **DISMISSED WITHOUT PREJUDICE**. In light of this ruling,

CFL's motion for partial summary judgment, [Dkt. 122], and Rockhill's motion for summary judgment, [Dkt. 131], are both **DENIED** as to the duty to indemnify issue.

### B. Rockhill's Duty to Defend

Rockhill moves for summary judgment pursuant to Federal Rule of Civil Procedure 56, requesting, in relevant part, that the Court enter declaratory judgment that Rockhill does not have a duty to defend CFL in the Underlying Action. [Dkt. 131 at 1.] As the insurer, Rockhill bears the burden of proof as to any basis for avoiding coverage. *PSI Energy, Inc. v. Home Ins. Co.*, 801 N.E.2d 705, 725 (Ind. Ct. App. 2004), trans. denied; *Gen. Housewares Corp. v. Nat'l Surety Corp.*, 741 N.E.2d 408, 414 (Ind. Ct. App. 2000). Savers' motion for judgment on the pleadings, [Dkt. 100, Dkt. 103], and CFL's motion for partial summary judgment, [Dkt. 122], also address this issue, both requesting a declaratory judgment that Rockhill does have a duty to defend CFL.

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. On a motion for summary judgment, the properly supported facts asserted by the non-moving party must be believed, and all reasonable inferences must be drawn in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). When the Court reviews cross-motions for summary judgment, as is the case here, "we construe all inferences in favor of the party against whom the motion under consideration is made." *Speciale v. Blue Cross & Blue Shield Ass'n*, 538 F.3d 615, 621 (7th Cir. 2008) (quotation omitted).

A party who bears the burden of proof on an issue may not rest on his pleadings, but, rather, must present evidence that demonstrates there is a genuine issue of material fact that

requires a trial. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). The non-moving party must specifically identify the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001); *see also Burton v. Bd. of Regents of Univ. of Wis. Sys.*, 851 F.3d 690, 695 (7th Cir. 2017) ("'It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered.'") (*quoting Liberles v. Cook Cnty.*, 709 F.2d 1122, 1126 (7th Cir. 1983)).

"Interpretation of an insurance policy presents a question of law that is particularly suitable for summary judgment." *State Auto. Mut. Ins. Co. v. Flexdar, Inc.*, 964 N.E.2d 845, 848 (Ind. 2012). "Clear and unambiguous language in insurance policy contracts, like other contracts, should be given its plain and ordinary meaning." *Cinergy Corp. v. Associated Elec. & Gas Ins. Servs., Ltd.*, 865 N.E.2d 571, 574 (Ind. 2007). "Policy terms are interpreted from the perspective of an ordinary policyholder of average intelligence. If reasonably intelligent persons may honestly differ as to the meaning of the policy language, the policy is ambiguous." *Gasser v. Downing*, 967 N.E.2d 1085, 1087 (Ind. Ct. App. 2012) (citation omitted). "However, an ambiguity does not exist merely because the parties proffer differing interpretations of the policy language." *Buckeye State Mut. Ins. Co. v. Carfield*, 914 N.E.2d 315, 318 (Ind. Ct. App. 2009), trans. denied (2010). Also, "a term is not ambiguous simply because it is not defined." *Bastin v. First Ind. Bank*, 694 N.E.2d 740, 746 (Ind. Ct. App. 1998), trans. denied.

Where an ambiguity does exist, insurance policies are to be construed strictly against the insurer. *Flexdar*, 964 N.E.2d at 848.

> This is especially true where the language in question purports to exclude coverage. Insurers are free to limit the coverage of their policies, but such

> limitations must be clearly expressed to be enforceable. Where provisions limiting coverage are not clearly and plainly expressed, the policy will be construed most favorably to the insured, to further the policy's basic purpose of indemnity. Where ambiguity exists not because of extrinsic facts but by reason of the language used, the ambiguous terms will be construed in favor of the insured for purposes of summary judgment.

*Id.* (citations and quotation marks omitted).

"We construe the policy as a whole and consider all of the provisions of the contract and not just the individual words, phrases or paragraphs." *Nat'l Mut. Ins. Co. v. Curtis*, 867 N.E.2d 631, 634 (Ind. Ct. App. 2007). "We must accept an interpretation of the contract language that harmonizes the provisions, rather than one that supports conflicting versions of the provisions." *Id.* We "should construe the language of a contract so as not to render any words, phrases, or terms ineffective or meaningless." *Hammerstone v. Indiana Ins. Co.*, 986 N.E.2d 841, 846 (Ind. Ct. App. 2013). "[T]he power to interpret contracts does not extend to changing their terms and we will not give insurance policies an unreasonable construction to provide additional coverage." *Curtis*, 867 N.E.2d at 634.

　　i. Occurrence

Rockhill asserts that the claims in the Underlying Lawsuit do not allege an "occurrence" as required by the Bodily Injury and Property Damage ("BI/PD") Liability coverage, but rather allege professional errors or omissions. The BI/PD Liability policy provides coverage for damages for bodily injury caused by an "occurrence," which the policies define as "an accident, including continuous repeated exposure to substantially the same general harmful conditions." [Dkt. 103-2, p. 27; Dkt. 133-2 at 26.] Indiana courts define "accident" as "an unexpected happening without an intention or design." *Tri-Etch, Inc. v. Cincinnati Ins. Co.*, 909 N.E.2d 997, 1002 (Ind. 2009). Rockhill contends that Indiana courts recognize a difference between an accident/occurrence and a professional error or omission, and that the former is covered by CGL

9

insurance, while the latter is covered by errors and omissions ("E&O") insurance. *See, e.g., Tri–Etch*, 909 N.E.2d at 1002 (noting "the distinction between an 'occurrence' as the term is used in CGL policies, and claims based on 'commercial or professional conduct.' Claims based on negligent performance of commercial or professional services are ordinarily insured under 'errors and omissions' or malpractice policies.") (internal citation omitted). Thus, Rockhill argues, because CFL failed to perform its contractually assumed duties in operating the landfill, the damage caused from this failure is a business risk and not an occurrence under Indiana law.

Rockhill's reliance on *Tri-Etch* is unpersuasive. In *Tri-Etch*, an insured alarm company filed suit against its insurer to recover for the insurer's failure to defend and indemnify the insured alarm company in an underlying suit alleging that the alarm company's delay in contacting a store after closing contributed to a store employee's death following a robbery. The Indiana Supreme Court held that the alarm company's failure to perform its contractual duty—calling its customer when the customer's alarm was not set by a certain time—was not an "occurrence" under Indiana law. *Tri-Etch*, 909 N.E.2d at 1003. The *Tri-Etch* court determined that the failure to perform a contractual duty was a business risk, not an accident, and further reasoned that, to the extent the insured alarm company had a duty to the third-party store employee, it arose from its contract with the store. That failure, the court found, "may give rise to tort liability. But it does not convert a failure to meet a standard of care under a contractually assumed duty into an 'accident.'" *Id.*

Here, however, the duty CFL owes to the Underlying Plaintiffs is not a contractually assumed duty. The Underlying Plaintiffs are not alleging a failure to perform a contractual duty or failure to meet a contractual standard of care; they are alleging a breach of the duty not to create a nuisance that interferes with the Underlying Plaintiffs' use and enjoyment of their

10

property. [Dkt. 99-1 at 7-8.] This duty exists outside of and in spite of the contract between CFL and the Counties. Whether the contract between the Counties and CFL was breached is irrelevant to the Underlying Plaintiffs—the duty not to create a nuisance does not arise from the contract, nor does it exist purely because of the contract. Thus, this Court finds that the Underlying Lawsuit is not alleging a contractually assumed business risk, but an occurrence, under *Tri-Etch*.[2]

    ii.  Professional Services Exclusion

Next, Rockhill argues that coverage for the Underlying Lawsuit is precluded by the BI/PD's Professional Services Exclusion, which provides that the policy does not provide coverage for bodily injury "due to the rendering of or failure to render any professional service, including, but not limited to:

    a.  Medical, health care, psychiatric, psychological, nursing, emergency medical or related services;
    b.  Legal, paralegal or related services;
    c.  Engineering architectural, surveying or related services;
    d.  Testing or consulting or related services;
    e.  Insurance, investment, financial, accounting or billing services or related services;
    f.  Security guard, investigative, risk management or related services;
    g.  Pastoral, Counseling or related services;
    h.  Teaching or related services; or
    i.  Barber, cosmetology or related services."

[Dkt. 103-2 at 42.] Rockhill's Excess Policy provides that the insurance does not apply to "[p]rofessional [s]ervices, bodily injury or property damage due to rendering or failure to render

---

[2] The Court notes that the parties focus much of their argument on whether *Sheehan Const. Co., Inc. v. Continental Cas. Co.*, 935 N.E.2d 160 (Ind. 2010), or *Tri-Etch* applies to our interpretation of "occurrence." Because the Court finds that an occurrence is alleged even under *Tri-Etch*, the Court need not address the interplay between *Sheehan* and *Tri-Etch* with regard to Indiana law interpreting "occurrence," other than to note that the same result would be reached under *Sheehan* in this case.

11

any professional service by you or any subcontractor working on your behalf or arising out of the rendering or failure to render any professional service by you or any subcontractor working on your behalf."

Pursuant to Indiana case law, professional services in this context means "any business activity conducted by the insured which involves specialized knowledge, labor or skill which is predominantly mental or intellectual as opposed to physical or manual in nature." *Terre Haute First National Bank v. Pacific Employers Insurance Company*, 634 N.E.2d 1336, 1339 (Ind. Ct. App. 1993). Rockhill argues that CFL was hired as a "sophisticated landfill operator" to operate the landfill "in a highly regulated environment subject to the operating permit regulations under the control and implementation of IDEM." [Dkt. 132 at 25.] Rockhill further argues that the "failure to control the migration of odors by allegedly failing to operate the landfill gas collection and odor migration systems properly" is a failure to properly apply specialized skill, labor, and knowledge. [*Id.* at 26-27.] This may be true, but that is not all that is alleged in the Underlying Lawsuit. While the gas collection and odor migration systems might be responsible for the migration of odors, so too could the simple act of improperly covering the waste with dirt, which would clearly be unsophisticated manual labor and thus not be a professional service. The construction and maintenance of a landfill, generally, does not constitute a professional service.

The Underlying Plaintiffs alleged that CFL "fail[ed] to reasonably construct, repair, operate, and/or maintain the Landfill," and "negligently and improperly constructed, maintained, and/or operated the landfill." [Dkt. 99-1 at 8-12.] The Court cannot say with certainty that the broad claims alleged in the Underlying Lawsuit fall entirely within the professional services exclusion. An insurer has a duty to defend unless all the allegations are clearly and completely excluded. *Liberty Mut. Ins. Co. v. OSI Industries, Inc.*, 831 N.E.2d 192, 198 (Ind. Ct. App.

2005). Therefore, because the liability for the odors allegedly stems from any number of errors or combination thereof in constructing, maintaining, and/or operating the landfill, Rockhill has a duty to defend CFL in the Underlying Lawsuit.[3]

Accordingly, Rockhill's motion for summary judgment is **DENIED** with regard to the duty to defend. For the same reasons, Savers' motion for judgment on the pleadings and CFL's motion for summary judgment are **GRANTED** as to their requests for declaratory judgment that Rockhill has a duty to defend CFL. Savers' motion is also **GRANTED** as to its request for declaratory judgment that Rockhill has a duty to reimburse Savers for Rockhill's pro rata share of defense costs Savers has paid to date in the Underlying Litigation.

C. **Other Relief Sought by CFL**

In addition to seeking declaratory judgment that Rockhill has a duty to defend, which, as set forth above, the Court finds that CFL is entitled to, and declaratory judgment that all three insurers have a duty to indemnify, which, as discussed above, the Court finds that CFL is not entitled to, CFL seeks several additional types of relief in its motion for partial summary judgment, [Dkt. 122.]   Each is addressed, in turn, below.

i. Declaratory Judgment Regarding Savers and Nautilus

First, CFL seeks a declaration that Savers and Nautilus have an obligation to defend CFL in the underlying action.  CFL is not entitled to this relief because Savers and Nautilus are already defending CFL and were doing so prior to the filing of this lawsuit.  See [Dkt. 122-1 at 6] (outlining agreement regarding Savers' defense of CFL); [Dkt. 147 at 15] (CFL conceding that Nautilus has been defending CFL under a reservation of rights since October 2020).

---

[3] Because the Court finds Rockhill has a duty to defend CFL under the BI/PD policy and no exclusions apply, the Court need not address whether the Underlying Lawsuit alleges a personal and advertising injury, nor whether the site-specific pollution policy is triggered.

13

"Article III of the Constitution limits the jurisdiction of the federal courts to 'Cases' and 'Controversies,' U.S. CONST. art. III, § 2." *N.J. by Jacob v. Sonnabend*, 37 F.4th 412, 420 (7th Cir. 2022) (citing *Chafin v. Chafin*, 568 U.S. 165 (2013)).

> Distilled to its essence, this requirement limits federal courts to resolving concrete disputes between adverse parties. *See Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 471, 102 S. Ct. 752, 70 L.Ed.2d 700 (1982). Put another way, Article III prevents federal courts from answering legal questions, however important, before those questions have ripened into actual controversies between someone who has experienced (or imminently faces) an injury and another whose action or inaction caused (or risks causing) that injury. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L.Ed.2d 351 (1992).

*Sweeney v. Raoul*, 990 F.3d 555, 559 (7th Cir. 2021). That a federal court has no authority to render advisory opinions—that is, an opinion that does not address an actual dispute between the litigants—has been called "'the oldest and most consistent thread in the federal law of justiciability.'" *Watkins v. United States Dist. Ct. for the Cent. Dist. of Illinois*, 37 F.4th 453, 460 (7th Cir. 2022) (quoting *Flast v. Cohen*, 392 U.S. 83, 96 (1968) (additional citation omitted)).

At no time during the pendency of this lawsuit has there been a controversy between CFL and Savers or CFL and Nautilus regarding those insurers' duty to defend CFL. Both have recognized their contractual duty to defend CFL and have undertaken that duty under a reservation of rights. CFL's request that the Court weigh in on a nonexistent controversy and/or resolve a dispute that CFL fears might arise sometime in the future is the very definition of seeking an advisory opinion, something the Court lacks jurisdiction to provide. Accordingly, CFL's motion for summary judgment is **DENIED** as to its request for declaratory judgment that Savers and Nautilus have a duty to defend CFL, and those claims will be **DISMISSED** without prejudice for lack of subject matter jurisdiction.

ii. Money Damages Against Rockhill and Nautilus

Next, CFL originally sought a monetary judgment against Rockhill and Nautilus (jointly and severally) for $108,756.88—the amount it had paid its attorneys in the underlying suit as of April 18, 2022, minus the amount Savers had paid under a negotiated agreement. CFL also sought prejudgment interest at the rate of 8% pursuant to Ind. Code § 24-4.6-1-102.

After CFL filed its motion, Nautilus paid CFL the $108,756.88 it sought. CFL agrees, as it must, that this payment moots its claim for that amount. That claim, therefore, will be **DISMISSED without prejudice** because it is moot. However, CFL argues that it is still entitled to an award of prejudgment interest. CFL further argues that, because neither Rockhill nor Nautilus addressed the issue of prejudgment interest in its response to CFL's motion, they have waived any argument they might have made. See [Dkt. 147 at 13-14].

The Court disagrees. CFL's request for prejudgment interest was made in the context of its request for a money judgment to which it is no longer entitled. No party has briefed the issue of whether, under Indiana law, CFL may recover prejudgment interest in the absence of any money judgment. "It is not this court's responsibility to research and construct the parties' argument." *Draper v. Martin*, 664 F.3d 1110, 1114 (7th Cir. 2011). The Court's own cursory research has not revealed a clear-cut answer but has revealed cases that suggest that a prejudgment interest award might not be appropriate in this case. *See Dahlin v. Amoco Oil Corp.*, 567 N.E.2d 806, 813 (Ind. Ct. App. 1991) ("Prejudgment interest may be recovered as **additional** damages to accomplish full compensation **when a damage award is made**." (citing *Spinsky v. Kay*, 550 N.E.2d 349, 353 (Ind. Ct. App. 1990))(emphasis added); *Indiana Insurance Company v. Sentry Insurance Company*, 437 N.E.2d 1381, 1391 (Ind. Ct. App. 1992)). Further, no party has briefed the effect, if any, of CFL's agreement to accept a reduced payment from

15

Savers on CFL's right to recover the full amount of prejudgment interest that accrued prior to that payment.

Because CFL has not demonstrated that it is entitled to summary judgment on the issue of prejudgment interest, its motion for partial summary judgment is **DENIED** as to that issue.

### iii. Declaratory Judgment Regarding CFL's Counsel's Rates

Finally, CFL seeks a declaration that "CFL can, from September 2020 onward, recover from Nautilus and Rockhill the difference between its counsel's reasonable market rates and the reduced rates paid by Savers" per a negotiated agreement between CFL and Savers. [Dkt. 122 at 7.] Again, there does not appear to be a case or controversy regarding this issue. Nautilus has accepted its duty to defend CFL, and there is simply no indication that it has interpreted that duty as being limited by CFL's agreement with Savers. And, as explained at length above, the Court will be issuing a declaratory judgment that Rockhill is contractually obligated to defend CFL; its obligation is governed by the terms of its contract with CFL, not by CFL's agreement with Savers. Accordingly, CFL is not entitled to this requested relief, and CFL's motion for partial summary judgment is **DENIED** as to this issue.

### III. Conclusion

For the reasons set forth above, the Court **GRANTS** Savers' Motion for Judgment on the Pleadings, [Dkt. 100], **GRANTS IN PART** and **DENIES IN PART** Rockhill's Motion for Summary Judgment, [Dkt. 131], **GRANTS IN PART** and **DENIES IN PART** CFL's Motion for Partial Summary Judgment, [Dkt. 122], and **GRANTS** Nautilus' Motion to Dismiss, [Dkt. 117].

## IV.  What Remains?

Because not all of the issues raised in the pleadings were resolved by the motions addressed herein, the Court will not enter judgment at this time.  Based on the Court's ruling herein, the following will be included in the Court's final judgment when it is entered:

1. Judgment is entered in favor of Savers on Count I of its Second Amended Complaint against Rockhill; the Court will enter a declaration that Rockhill has a duty to defend CFL in the Underlying Litigation and that Rockhill has a duty to reimburse Savers for Rockhill's pro rata share of defense costs Savers has paid to date in the Underlying Litigation;

2. Judgment is entered in favor of CFL on its claim against Rockhill for a declaration that Rockhill has a duty to defend CFL in the Underlying Litigation;

3. CFL's counterclaim for declaratory judgment that Savers has a duty to indemnify it in the Underlying Litigation is **DISMISSED WITHOUT PREJUDICE** as premature;

4. CFL's counterclaim against Savers seeking a declaration that Savers has a duty to defend CFL in the Underlying Litigation is **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction because there is no case or controversy as to this claim;

5. Count I of CFL's crossclaims against Nautilus and Rockhill for breach of contract seeking payment of outstanding defense costs is **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction because it is moot;

6. CFL's request in Count II of its crossclaims seeking declaratory judgment that Rockhill and Nautilus have a duty to indemnify it in the Underlying Litigation is **DISMISSED WITHOUT PREJUDICE** as premature; and

7. CFL's request in Count II of its crossclaim against Nautilus seeking a declaration that Nautilus has a duty to defend CFL in the Underlying Litigation is **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction because there is no case or controversy as to this claim.

The Court believes that the only other outstanding issues in this case are (1) CFL's claims for prejudgment interest against Rockhill and Nautilus; and (2) Savers' claim for a money judgment against Rockhill for Rockhill's share of defense costs paid by Savers to date (Count II of Savers' Second Amended Complaint),[4] including a calculation of Rockhill's pro rata share.[5] This case is set for a telephonic status conference on **Wednesday, October 26, 2022 at 9:30 a.m. (Eastern)** to discuss how those issues will be resolved. Counsel shall attend the status conference by calling the designated telephone number, to be provided by the Court via email generated by the Court's ECF system. If any party believes there are any additional issues to be resolved before final judgment is entered, it shall file a notice on or before **October 24, 2022** identifying those issues and the pleading in which each such issue is raised.

SO ORDERED.

Dated: 14 OCT 2022

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

---

[4] This relief is sought in Savers' Second Amended Complaint, [Dkt. 73], but is not mentioned in Savers' motion for judgment on the pleadings.
[5] Savers suggests that "[p]ursuant to the Savers and Rockhill Policies' Other Insurance provisions, the Savers and Rockhill Policies should contribute by equal shares." [Dkt. 101 at 12.] However, Savers does not develop this argument sufficiently for the Court to resolve it.

Distribution:

Service will be made electronically
on all ECF-registered counsel of record via
email generated by the Court's ECF system.